IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELVIN GREEN, Plaintiff, v. ERIC TAYLOR, et al., Defendants. | HON. JEROME B. SIMANDLE<br>Civil No. 10-1191 (JBS/AMD)<br>**OPINION** |
| ARMANI COOK, Plaintiff, v. ERIC TAYLOR, et al., Defendants. | Civil No. 10-2643 (JBS/AMD) |
| DARRELL CRONE, Plaintiff, v. ERIC TAYLOR, et al., Defendants. | Civil No. 10-1341 (JBS/AMD) |
| JOSEPH D. D'AGOSTINO, Plaintiff, v. ERIC TAYLOR, et al., Defendants. | Civil No. 10-2740 (JBS/AMD) |
| DAVID ENGLISH, Plaintiff, v. ERIC TAYLOR, et al., Defendants. | Civil No. 10-2854 (JBS/AMD) |
| NATHAN INGRAM, Plaintiff, v. ERIC TAYLOR, et al., Defendants. | Civil No. 10-2439 (JBS/AMD) |

[Caption Continued]

| | | |
|---|---|---|
| BARRY LEWIS,<br>Plaintiff,<br>v.<br>ERIC TAYLOR, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: | Civil No. 10-2543 (JBS/AMD) |
| STEPHEN S. KUNST,<br>Plaintiff,<br>v.<br>ERIC TAYLOR, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: | Civil No. 10-1608 (JBS/AMD) |
| MARK W. MILLERLINE,<br>Plaintiff,<br>v.<br>ERIC TAYLOR, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: | Civil No. 10-2741 (JBS/AMD) |
| CARLTON SIMMONS,<br>Plaintiff,<br>v.<br>ERIC TAYLOR, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: | Civil No. 10-1192 (JBS/AMD) |
| DARRYL STOVE,<br>Plaintiff,<br>v.<br>ERIC TAYLOR, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>: | Civil No. 10-3077 (JBS/AMD) |

**SIMANDLE**, Chief Judge:

## I. INTRODUCTION

Presently before the court are eleven unopposed motions for summary judgment by defendants in eleven nearly identical actions brought by pretrial detainees or convicted inmates who were confined for varying periods of time in 2009 and 2010 in the

Camden County Correctional Facility ("CCCF").[1] The moving Defendants in each of the actions are Warden Eric Taylor, Deputy Warden Christopher Fossler, Deputy Warden Anthony Pizzaro, Camden County Freeholder Rodney Greco, Camden County Freeholders, and Camden County.

The Plaintiffs allege that the conditions of confinement at CCCF violate their rights under the U.S. Constitution, and their grievances include overcrowding, understaffing and unsanitary conditions. Defendants now move for summary judgment, arguing that claims for injunctive relief are moot, that Plaintiffs adduce no evidence of a Fourteenth Amendment violation, and that the Defendants are entitled to qualified immunity. Because the Plaintiffs bear the burden of proof at trial and have produced no evidence supporting their pleadings, and because the Plaintiffs have shown minimal interest in litigating their claims, the motions for summary judgment will be granted.

## II. Background

All of the Plaintiffs were confined at the CCCF for various

---

[1] The pending motions for summary judgment, all filed in this District on November 8, 2012, are: Green v. Taylor, No. 10-1191 [Docket Item 176], Cook v. Taylor, No. 10-2643 [Docket Item 23], Crone v. Taylor, No. 10-1341 [Docket Item 37], D'Agostino v. Taylor, No. 10-2740 [Docket Item 27], English v. Taylor, No. 10-2854 [Docket Item 37], Ingram v. Taylor, No. 10-2439 [Docket Item 29], Kunst v. Taylor, No. 10-1608 [Docket Item 30], Lewis v. Taylor, No. 10-2543 [Docket Item 27], Millerline v. Taylor, No. 10-2741 [Docket Item 30], Simmons v. Taylor, No. 10-1192 [Docket Item 33], and Stove v. Taylor, No. 10-3077 [Docket Item 24].

periods of time in 2009 and 2010, and all were pretrial detainees, except for Plaintiff Stephen S. Kunst, who had been sentenced.[2]

Plaintiffs allege that the number of inmates at the CCCF far exceeded capacity and caused "unhealthy, unsafe and unsanitary" conditions. See, e.g., Complaint at ¶ 34, Green v. Taylor, No. 10-1191 (D.N.J. filed Mar. 8, 2010). Plaintiffs allege that the CCCF provided inadequate sleeping arrangements, inadequate cleaning materials, inadequate medical staff, and understaffed maintenance crew. Id. at 9-10, 12-13. Plaintiffs also allege that the CCCF failed to separate inmates with contagious diseases and co-mingled inmates with pretrial detainees. Id. at 13.

All eleven detainees filed virtually identical Complaints, which contain the same factual and legal allegations and use, in

---

[2] See Complaint ¶ 36(a) at 13, Kunst v. Taylor, No. 10-1608 (D.N.J. filed Mar. 30, 2010), ECF No. 1 (stating Kunst was sentenced to "a 364"). Although Plaintiff Kunst's claims invoke the Eighth Amendment, whereas the pretrial detainees' claims are analyzed under the Fourteenth Amendment, this is "a distinction without a difference, as the Fourteenth Amendment provides at least as much protection as the Eighth Amendment." Jackson v. City of Philadelphia, Nos. 12-2986 & 12-3187, 2013 WL 363463, at *3 (3d Cir. Jan. 31, 2013). Courts in this circuit generally apply the same Eighth Amendment standard to claims under the Fourteenth Amendment in cases such as this. See, e.g., Smith v. Merline, 797 F. Supp. 2d 488, 499-500 (D.N.J. 2011) (applying the Eighth Amendment standard to a pretrial detainee claiming inadequate medical treatment under the Fourteenth Amendment). Because the standard is the same for claims under the Eighth and Fourteenth Amendments, for convenience, the Court will conduct only one inquiry and will refer to all Plaintiffs collectively as "Plaintiffs" or "detainees" in this Opinion.

large part, identical language, paragraph structure, headings, bolded phrases and pagination. Many of the Complaints contain the same typographical errors.[3] All but one of the Plaintiffs brought claims against the moving Defendants under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments.[4]

These cases were consolidated on July 6, 2010, at which time the Court dismissed all Eighth Amendment claims brought by pretrial detainees. See, e.g., Order, Green v. Taylor, No. 10-1191 (D.N.J. entered May 25, 2010), ECF No. 7. However, the cases were de-consolidated on February 6, 2012, because the Court was unable to obtain pro bono counsel to represent all Plaintiffs jointly. See, e.g., Order, Green v. Taylor, No. 10-1191 (D.N.J. entered Feb. 6, 2012), ECF No. 156. The Order de-consolidating the cases noted that the individual Plaintiffs could seek to retain individual pro bono counsel. Id.

None of the Plaintiffs are confined at CCCF at present. See,

---

[3] For instance, six Plaintiffs -- Green, Crone, English, Lewis, Simmons and Stove -- misspell the word "grow" as "grwo" in Paragraph 22 of their Complaints.

[4] Plaintiff Kunst brought claims only under the Eighth Amendment.

All Plaintiffs also brought claims against Aramark, Inc., Aramark Correctional Services, and Dietician Carey, who provided meal services at the CCCF. All claims against the Aramark defendants have been dismissed. See Simmons v. Taylor, No. 10-1192, 2012 WL 3863792, at *4 (D.N.J. Sept. 5, 2012); Cook v. Taylor, No. 10-2643, 2012 WL 4959519, at *2 (D.N.J. Oct. 16, 2012) (dismissing claims in eight actions); Kunst v. Taylor, No. 10-1608, 2012 WL 5451275, at *3 (D.N.J. Nov. 5, 2012).

e.g., Statement of Material Facts ¶ 3, Green v. Taylor, No. 10-1191 (D.N.J. filed Nov. 8, 2012), ECF No. 176 (hereinafter "Green Statement of Facts"). Defendants now bring motions for summary judgment. All motions are unopposed.

**III. Standard of review**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Where, as in this case, the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment by observing that there is an absence of evidence to support an essential element of the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Rahman v. Taylor, No. 10-0367, 2013 WL 1192352, at *2-*3 (D.N.J. Mar. 21, 2013). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. A plaintiff opposing a defendant's motion for summary judgment has the burden of coming forward with evidence, not mere allegations, that would raise a genuine dispute of material fact and suffice to enable a

reasonable jury, giving all favorable inferences to the plaintiff as the party opposing summary judgment, to find in plaintiff's favor at trial. Rule 56(c)(1)(A) provides that the nonmovant, to create a genuine issue of material fact, must do so by:

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .

Fed. R. Civ. P. 56(c)(1)(A).

However, failure to respond to a motion for summary judgment "is not alone a sufficient basis for the entry of a summary judgment." Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990). The Court still must determine, even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is appropriate. Id.

In order to grant Defendants' unopposed motion for summary judgment, where, as here, "the moving party does not have the burden of proof on the relevant issues, . . . the district court must determine that the deficiencies in opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." Anchorage Assocs., 922 F. 2d at 175. Additionally, pursuant to Local Civil Rule 56.1(a), Defendants' statements of material facts, having not been admitted, denied or addressed by Plaintiffs in any other fashion,

are deemed undisputed for the purposes of this motion.

**IV. Discussion**

Defendants assert in their uncontroverted Statements of Material Facts, which the Court deems admitted under L. Civ. R. 56(a), that none of the Plaintiffs are currently confined at the CCCF, citing change of address forms each Plaintiff submitted to the Court. See, e.g., Green Statement of Facts ¶ 3 and Ex. A.[5] Defendants further assert that all attempts at discovery have been frustrated by Plaintiffs' unresponsiveness. Id. ¶ 5. Defendants state:

> Moving Defendants served the Plaintiff with their Rule 26 Disclosures on or about June 26, 2012 and served the Plaintiff with Interrogatories and a Request for Production on July 9, 2012. See correspondence attached hereto as Exhibit "B". To date, Plaintiff has not served the Defendants with his Rule 26 Disclosure, nor has he served Defendants with his discovery responses.

Id. Defendants further assert that, as a result of other class-action litigation addressing overcrowding and conditions of confinement at the CCCF,[6] overcrowding has diminished and County and prison officials continue to improve conditions. Id. ¶¶ 6-9.

Defendants argue that, based on these facts, Plaintiffs'

---

[5] The eleven Statement of Material Facts are identical, save for details specific to each Plaintiff, such as dates and status of confinement. Additionally, all exhibits attached to the motions for summary judgment are equivalent or identical for each Plaintiff. For the sake of efficiency, the Court will cite one motion as representative of the motions in each case.

[6] See generally Dittimus-Bey v. Taylor, No. 05-0063 (D.N.J. filed Jan. 6, 2005).

claims for injunctive relief are moot. (See, e.g., Def. Mot. Br. at 4-5, Green v. Taylor, 10-1191 (D.N.J. filed Nov. 8, 2012).) Defendants further argue that Plaintiffs fail to state a claim or raise genuine issues of fact as to any Fourteenth Amendment violation. (Id. at 6-9) Defendants contend that Plaintiffs have adduced no proof of unconstitutional conditions, no proof of injury or damages, and no evidence that Defendants were deliberately indifferent to the allegedly constitutional violations, as required by Bell v. Wolfish, 441 U.S. 520, 535 (1979) and Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007). Id. at 6-10. Finally, Defendants argue that the individual Defendants are entitled to qualified immunity, because "plaintiff cannot prove that it would have been clear to the individual defendants that their conduct was unlawful" when they were acting against the backdrop of the Consent Orders in the Dittimus-Bey litigation. Id. at 10-11.

Rule 56(e), Fed. R. Civ. P., offers the Court four options when facing unopposed motions for summary judgment and when parties fail to support or address a fact asserted by the movants. Courts may

> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it;
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). The advisory committee notes provide further guidance. Subsections (e)(1) and (e)(4) permit the Court to request a response from the nonmoving party or to advise pro se litigants of the risk of losing if an adequate response is not filed. See Fed. R. Civ. P. 56(e) advisory committee's note (2010 Amendments). Subsection (e)(2) overlaps with L. Civ. R. 56(a) in that it states a fact may be deemed admitted, if not properly opposed. Finally, the note on Subsection (e)(3) advises that once the Court has determined the facts, including those deemed admitted, "it must determine the legal consequences of these facts and permissible inferences from them" before granting summary judgment. Id. "[T]he court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant." Id.

This Court recently considered these options in deciding a similar case by a pro se litigant who, seeking to challenge conditions of confinement at the CCCF, failed to oppose a motion for summary judgment. In Rahman v. Taylor, the Court declined to use Subsection (e)(1) or (e)(4) to request opposition from the plaintiff because "Defendants have been frustrated in their attempts to obtain responsive discovery" and the defendant, "in fairness, [should] not have to await the Plaintiff's response to a summary judgment motion to receive this discovery, especially where Plaintiff has submitted no response to the motion." Rahman,

2013 WL 1192352, at *4 n.2. The Court examined the record of the case and noted that plaintiff had responded to interrogatories but only referred the defendants to his complaint and did not otherwise address the substance of the interrogatories. Id. at *3. The Court observed that the plaintiff "has not produced any evidence to support his claims; his Second Amended Complaint is not evidence and thus does not suffice to survive a motion for summary judgment." Id. at *4. The Court found the absence of evidence "particularly glaring because Plaintiff's Second Amended Complaint does not allege that Warden Taylor or the Camden County Department of Corrections engaged in specific harmful acts." Id. After stating that state actors cannot be liable under § 1983 on the basis of respondeat superior, the Court granted the motion for summary judgment. Id.

In this case, no evidentiary record exists apart from the material submitted by the moving Defendants, and Plaintiffs have been even less engaged in this litigation than the plaintiff in Rahman, who at least set forth personal allegations in his complaint and attempted, albeit insufficiently, to respond to interrogatories. Here, the Complaints themselves, nearly identical in all respects, are devoid of allegations personal to each Plaintiff, other than dates and detainee status, and the pleadings include no facts as to any personal injuries suffered by the Plaintiffs or any specific conduct by any of the named

Defendants. It is as if Plaintiffs signed a petition or pre-drafted form to submit to the Court, and most have shown little or no interest in litigating these claims since.

The Plaintiffs' lack of engagement is striking. None of the Plaintiffs has responded to discovery requests or answered interrogatories from Defendants. None opposed motions to dismiss by the Aramark defendants, and none sought to appeal the dismissals or requested the Court to reconsider. Some Plaintiffs have not contacted the Court related to these matters for two and a half years or more.[7] The Court has not heard from eight of the eleven Plaintiffs since before the cases were de-consolidated on February 6, 2012, even though this Court ordered all Plaintiffs to advise the Court of any change of address and warned that failure to do so could result in sanctions, including termination of their cases.[8] (See, e.g., Order, Green v. Taylor, No. 10-1191 (D.N.J. entered Nov. 4, 2010), ECF No. 89.) The remaining three Plaintiffs have not contacted the Court since the spring or summer of 2012, and none has attempted to assert anything of

---

7 Plaintiffs D'Agostino, Lewis, Millerline and Stove last notified the Court of a change of address in 2010 and have not otherwise corresponded with the Court since.

8 Plaintiffs Cook, Ingram, Kunst and Simmons last notified the Court of a change of address in 2011. In the case of Plaintiff Simmons, mail has been returned undeliverable twice since his last change of address notice.

substance related to their claims on their own behalf.[9] In many ways, these cases resemble actions that would be subject to dismissal for failure to prosecute.[10]

Given this history and the fact that Rule 56(e) does not mandate any specific action in this circumstance, the Court declines to issue an order requesting opposition or to attempt to send other correspondence to Plaintiffs under Subsections (e)(1) or (e)(4). These are not hotly contested cases where Plaintiffs

---

[9] Plaintiff Green last contacted the Court on May 11, 2012, with a change-of-address notice. (See Green v. Taylor, No. 10-1191, ECF No. 172.) Plaintiff English requested pro bono counsel in June 2012, but that request was denied without prejudice, affording Mr. English the opportunity to explain his need in more detail. (See Order, English v. Taylor, No. 10-2854 (D.N.J. entered Sept. 5, 2012), ECF No. 32.) He never wrote the Court again. Plaintiff Crone wrote the Court on July 2, 2012, requesting an extension to submit a pretrial memorandum, but never contacted the Court again, and the last two attempts to contact Mr. Crone by mail were unsuccessful. (See Letter, Crone v. Taylor, No. 10-1341 (D.N.J. entered July 6, 2012), ECF No. 28; see also Crone, No. 10-1341, ECF nos. 35 & 36 (documenting undeliverable mail).)

[10] The Court has "inherent power to dismiss sua sponte for failure to prosecute." Reshard v. Lankenau Hosp., 256 F. App'x 506, 507 (3d Cir. 2007) (affirming dismissal of a case for failure to prosecute after the plaintiff had taken no action for two and a half years). Discretionary dismissal likely would be appropriate where, as here, (1) the Plaintiffs have shown no personal responsibility for their cases, (2) the Plaintiffs likely have prejudiced Defendants by refusing to participate in discovery, (3) the Plaintiffs have shown a pattern of unresponsiveness, (4) requests from Defendants and this Court for responses or updates have gone unanswered, and (5) Plaintiffs' claims, accepting Defendants' undisputed facts as true, appear to be without merit as a matter of law. See Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984) (enumerating six factors to consider prior to sua sponte dismissal).

simply need leniency from the Court or where Plaintiffs' diligence warrants alternative, discretionary consideration. These pro se plaintiffs have not made even a minimal attempt to vindicate their rights aside from filing the Complaints.[11] Having deemed Defendants' factual assertions admitted, the Court will consider the legal consequences of those facts and any other material in the record, under Subsection (e)(3).

As stated above, in this case there is no evidentiary record apart from what the Defendants attached to their motions for summary judgment. Plaintiffs have provided the Court only with pleadings that contain a mix of facts and legal conclusions. The Complaints contained no attached affidavits, certifications or exhibits. Plaintiffs did not provide pretrial disclosures or produce pretrial discovery when requested. Mere pleadings are insufficient to defeat summary judgment. Rahman, 2013 WL 1192352, at *3.

Defendants' factual assertions, which are deemed undisputed, indicate that the entry of summary judgment is appropriate. No Plaintiffs presently are confined at the CCCF and therefore the Plaintiffs lack Article III standing to enjoin allegedly

[11] Compare these Plaintiffs with a twelfth plaintiff, Kashief White, who has attempted to assert his rights by opposing a motion to dismiss by the Aramark defendants. (See Letter Brief in Opposition, White v. Taylor, No. 10-5485 (D.N.J. filed Mar. 4, 2013), ECF No. 34.) There is no pending motion for summary judgment in that case.

unconstitutional acts taking place there or to receive declaratory relief. See Vazquez v. Ragonese, 393 F. App'x 925, 928 (3d Cir. 2010) (per curiam) (affirming the district court's holding that a prisoner lacked standing to enjoin conduct at a correctional facility where he was no longer incarcerated). A detainee's "transfer from the facility in question generally moots any claims for equitable and declaratory relief, unless the challenged action is 'capable of repetition, yet evading review.'" Id. (quoting Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993)). As evidenced by the successful class-action litigation, Dittimus-Bey, the conditions at CCCF do not evade review.

The Dittimus-Bey litigation and its effects, as characterized in Defendants' undisputed statement of facts, also foreclose the potential for monetary relief for these litigants upon the present record. As early as January 2008, the County and jail officials agreed to a Consent Decree in the Dittimus-Bey matter to take measures to improve the conditions at the CCCF, such as by retaining criminal justice planning firms to investigate and recommend solutions to the CCCF's overcrowding and staffing problems. The parties to that litigation entered new Consent Decrees on August 19, 2009,[12] and March 4, 2011.[13] (Green

[12] The August 29, 2009 Second Consent Decree adopted six major recommendations of the criminal justice planners, Pulitzer Bogard & Associates, LLC, embracing a comprehensive plan for

Statement of Facts ¶¶ 6-7.) Defendants' undisputed facts show a significant lessening of the crowding in the facility and improvements in other conditions. While it is conceivable that an individual inmate could be subjected to unconstitutional conditions even at a jail that is continuously monitored and

---

managing the population and conditions of the CCCF, partnering with the noted experts Luminosity, Inc. The six recommendations adopted in the Second Consent Decree included: (1) that the Defendants would hire Luminosity, Inc., as consultants to bring about better data collection and dissemination, facilitate coordination and meetings of all relevant stakeholders, and develop a "jail population manager" position; (2) creation of the Camden County Criminal Justice Coordinating Committee with representative from the Municipal, Criminal and Family Divisions of the Superior Court, the Prosecutor's office, the Public Defender's office, Probation, Private Defense Bar, County Administrator, Sheriff, Jail Administration and the County Corrections Information System; (3) improving accuracy of information about time/day in custody; (4) improving access of counsel to clients in jail; (5) reducing time to release detainees on electronic monitoring as alternative to incarceration; and (6) County to establish pretrial services program as alternative to confinement pending trial. These structural and operational changes in 2009, aided by cooperation among all responsible entities, led to rapid reductions in overcrowding, as documented in the Third Consent Decree in 2010, below.

[13] The Third Consent Decree, filed December 14, 2010, and entered March 4, 2011, documented the substantial progress in improving jail crowding conditions through better management and coordination. The average daily population of CCCF fell from 1,848 inmates in 2005 to 1,232 inmates in May 2010, which was below the CCCF's rated capacity of 1,267 inmates. Each of the areas of improvement under the Second Consent Decree had been accomplished, including reducing the number of inmates, the length of stay, and the occurrence of overcrowding in cells, and increasing electronic monitoring and coordination within the criminal justice system. The work of the Jail Population Reduction Committee continued, all with the guidance and coordination of the jail population manager.

operating within reasonable capacity limits, these Plaintiffs have not adduced evidence that they have suffered such deprivation.

These undisputed facts refute any claim that the County or other supervisors at the facility were "deliberately indifferent" to the alleged constitutional violations, the level of mental culpability which must be proven to ground liability under § 1983. See Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 250 (3d Cir. 2007) (describing the "deliberate indifference" standard). There is no evidence of conduct that would tend to show deliberate indifference of the part of any named Defendant; indeed, the Complaints assert no facts regarding the conduct of any of the individually named Defendants. Therefore, the Defendants are entitled to summary judgment on the Eighth and Fourteenth Amendment claims.

The undisputed facts of the effectiveness of the improvement measures also would entitle the individual Defendants to qualified immunity, as the individuals have shown they acted as a reasonable jail or County official might act, against the backdrop of measures implemented to improve conditions under Court supervision. See Brown v. Cwynar, 484 F. App'x 676, at 680-81 (3d Cir. 2012) (stating that qualified immunity attaches then constitutional rights are violated and "it would have been clear to a reasonable officer that the conduct was unlawful in light of

'clearly established' law). If a reasonable official would not have understood Defendants' conduct to be unlawful, then qualified immunity attaches. Id. at 681. Here, reasonable officials could have relied on Court-supervised consent decrees to guide their actions and to believe their actions were lawful.

**V. Conclusion**

Defendants are entitled to summary judgment. Accompanying Orders will be entered in each case.

**April 3, 2013**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge